IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JAMES R. WOOD,<br>Plaintiff, | ) | |
| v. | ) | Civil Case No. 1:24-cv-673 (RDA/WEF) |
| STEVE HERRICK, MD, MSHA, *et al.*,<br>Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Steve Herrick's ("Herrick") Motion to Dismiss (Dkt. 19) James R. Wood's ("Wood") § 1983 Complaint (Dkt. 1)[1] alleging that Wood had been denied adequate medical care while in the custody of the Virginia Department of Corrections ("VDOC") at the Deerfield Correctional Center ("DCC"). Specifically, Wood alleges that Herrick violated his Eighth Amendment rights because he was deliberately indifferent to Wood's serious medical condition—morbid obesity—and Wood's need for proper, adequate, and timely medical treatment (medical diet consultation with a specialist to address his metabolic syndrome, pharmacological help for weight loss). Wood alleges that Herrick was aware that he was not receiving proper, adequate, and timely medical treatment; Herrick took no corrective action; and Herrick's failure caused Wood physical, mental, and emotional, injury, harm, and suffering. Dkt. 1-1 at 22. On January 6, 2026, the Court advised Wood of his rights under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Dkt. 21, and he responded on March 20, 2026 with a brief and exhibits. Dkts. 27, 28. The matter is now ripe.

[1] The other Defendants are Alvin Harris, M.D.; Charles Friend, M.D.; Camble, M.D.; Marrano (Marinos), F.N.P; and K. Silvis-Root, F.N.P. Dkt. 1-1 at 1-2. Wood was released from custody on April 1, 2026. Dkt. 31-1.

## I. Standard of Review

Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Sumner v. Tucker*, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the "light most favorable to the plaintiff." *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original). A complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (a pleading must be presented "with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of the pleader's claims "without untoward effort"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In this context of a Rule 12(b)(6) motion, "the reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level' and 'to state a claim to relief that is plausible on its face.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). While all well-pleaded material

facts are accepted as true and all inferences are drawn in the plaintiff's favor, *id.*, that presumption of truth is not applied "to 'conclusory statements' and 'legal conclusions'" in a complaint. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). Further, a court may also consider "documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," and documents attached to a motion to dismiss as long as they are "integral to the complaint" and "authentic[]." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal quotation marks omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails." *Id.* (quoting *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (ellipses omitted)). The Court may also take judicial notice of "matters of public record." *Goldfarb*, 791 F.3d at 508-09.

Where a complaint is filed by a prisoner acting *pro se*, however, that complaint must be construed liberally regardless of how unskillfully it is pleaded. *Haines v. Kerner*, 404 U.S. 519 (1972). A *pro se* litigant is therefore not held to the strict pleading requirements demanded of attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106-07 (1976); *see also Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) ("This Court reads *pro se* pleadings to raise the strongest arguments that they suggest, and we consider whether a *pro se* civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey.").

**II. Statement of Facts**[2]

[2] The Statement of Facts is based upon Wood's Complaint, Exhibits, and admissions made in pleadings. The Statement of Facts is limited to facts that are relevant to his claim against Herrick. To the extent Wood's documents are inconsistent with his Complaint, "[e]ven on a motion to dismiss, 'in the event of a conflict between the bare allegations in the complaint and any exhibit attached, the exhibit prevails.'" *Wells v. Fuentes*, 126 F.4th 882, 893 n.10 (4th Cir. 2025) (quoting *Goines*, 822 F.3d at 166 (cleaned up)).

1. Herrick, "a lay man" and an administrative/executive Defendant, is the Director of VDOC Health Services and "is responsible for ensuring that all inmates are receiving proper, timely, and adequate medical treatment, care and services" pursuant to federal and state laws and VDOC policies. Dkts. 1-1 ¶¶ 5, 62; 27 ¶ 12(g). Wood alleges Herrick's duties also included "making corrections to an inmate's medical care when he becomes personally aware that an inmate is not receiving proper medical care or services through investigations into second level grievance response[s]. . . ." Dkt. 1-1 ¶ 5.

2. Prior to his incarceration, Wood experienced "significant feet and ankle issues and was diagnosed with such issues as: posterior tibial tendon pain, sinus tarsi with sub[talar] joint range of motion, ankle joint range of motion limited in the dorsiflexion without crepitation, rectus arch structure non[-]weightbearing with hallux abduction on the hindfoot, posterior tibial tendonitis and capsulitis to the subtalar joint and posterior tibial tendon dysfunction with osteoarthritis." *Id.* ¶ 14. Wood received custom orthotic footwear and an ankle brace. *Id.* He also received several injections of corticosteroids, which helped alleviate some of the inflammation. *Id.*

3. On July 11, 2019, Wood saw Dr. Adams, a podiatrist, and showed her "[a]ll pre-incarceration medical paperwork and [results]" to her. *Id.* ¶¶ 14-15. Dr. Adams saw Wood for foot pain, diagnosed his pain was due to his "flat feet and fallen arches," and also noted pain in his tendon, hammer toe, and heavy callous. *Id.* Dr. Adams completed a UMD[3] for custom orthotics. Dkt. 4 at 1.[4]

---

[3] The acronym "UMD" appears in the medical records and other documents and, from the context in which it is used, "UMD" refers to a medical provider's employee, outside of the DCC medical unit, that approves medical provider requests. *See, e.g.*, *Pollard v. Grace Med. Ctr.*, 2022 WL 3599141, at *10 (D. Md. Aug. 23, 2022) (As a Utilization Management Medical Director ("UMD"), Dr. Dorsey "reviews and provides approval for requests for specialized services" on behalf of the provider, Corizon, and was not an on-site medical provider.).

[4] Wood states Dr. Adams "ordered" custom orthotics, which is contradicted by the medical record he

4. On August 15, 2019, Alfred Gervin M.D., approved a request from Dr. Yancey for one pair of custom orthotics for Wood. The "supporting facts" were—Bilateral flat feet with digital deformities and [Wood had] tried prefabricated orthotic devices, with minimal improvement in pain. Offender is 6'1" and 339 pounds." *Id.* at 2.

5. Wood filed his Complaint on August 29, 2019, stating that he had been denied the custom orthotics. *Id.* ¶ 18. Nurse Stewart responded to his Complaint on September 11, 2019, stating that Dr. Yancey had informed Wood that his "custom orthotics were not approved" and advised Wood "to work on weight losing strategies." Dkts. 4 at 4; 1-1 ¶ 18.

6. On September 11, 2019, Dr. Yancey had informed Wood that the custom orthotics had been denied by the "approving agent" in August 2019 due to his "morbid obesity." Dkt. 1-1 ¶ 17.

7. Wood alleges that even though Wood was denied the custom orthotics because of his "morbid obesity," Dr. Yancey "did not give any treatment for [Wood]'s . . . morbid obesity." *Id.*

8. On September 16, 2019, Wood filed a second Informal Complaint concerning the denial of the custom orthotics. *Id.* ¶ 19. Stewart responded on October 2, 2019, noting that Dr. Yancey had informed him about the denial on September 11, 2019, and reminded Wood that Dr. Yancey had told Wood "to be compliant with weight loss to help [his] issue." Dkt. 4 at 5. Wood alleges that "no weight loss treatment was ordered, no medical diet was ordered for [Wood]'s disease of morbid obesity." Dkt. 1-1 ¶ 19.

9. On October 14, 2019, Wood's wife, Ms. Allison Wood, sent an email to Director Harold W. Clarke complaining about Wood's medical care. Mrs. Wood mentioned flex cuffs; the

submitted with his Complaint. In other words, Dr. Adams' "order" was a recommendation that required approval by someone else.

denial of the insoles; hearing aids and an appointment with an audiologist; x-rays/MRIs for his back and neck; callous on his great right toe; and copies of medical records. Dkt. 4 at 7-10. The first email did not complain about lack of care for morbid obesity and mentioned Wood's weight in different contexts. *Id.* The email noted that the custom orthotics were denied due to Wood's "obesity" and because Wood was "to[o] fat;" and asked rhetorical questions—

- "Who in their right mind would deny an obese man with a preexisting injury the very medical device that would aid in his weight loss?"
- "Is this the strategy for the whole DOC? To deny custom orthotics for obese offenders. My husband says there are a lot of obese men at Deerfield . . . ."

*Id.* at 7, 8.

10. On October 18, 2018, L. Ray, DCC's Health Services Administrator, wrote a letter to Wood discussing his several complaints. *Id.* at 9. Ray mentioned that the request for the custom orthotics had been denied by the central approver and the reason "cited was [Wood's] morbid obesity." Dkt. 1-1 at 10. The central approver stated that "intervention would be futile without prior and sustained weight loss by Mr. Wood." *Id.* Wood alleges that "[e]ven though [he] was diagnosed with morbid obesity again, no treatment for his disease was given. [Wood] protested these findings." Dkt. 1-1 ¶ 21.

11. On November 11, 2019, Mrs. Wood sent a second email to Ray, with copies to others including Herrick. Dkt. 4 at 12-13. The second email complained about the medical care Wood had received with regard to flex-cuffs, the denial of the custom orthotics, and hearing aids/audiology. *Id.* Wood's weight was addressed in the context of obesity, which was the reason the custom orthotics had been denied. *Id.*

> He is being denied custom orthotics even though he has a preexisting condition and a preexisting injury from the Navy that is well documented by not only his personal physician, but by the DOC podiatrist, Dr. Adams. He has both sets of medical records confirming this. This so-called reason for not authorizing these of him being obese has got to be the most absurd thing that I have heard. Shouldn't that

> be the reason they should be authorized so that he would feel more like going out to walk or exercise more? James wanted to know what the definition of obesity was. Nurse Reed told him that it goes by B.M.I. . . . On his regular grievance DCC-19-INF-00347, he was provided with a BMI #44.72 for his current weight and height. We need to know what the BMI# is that he needs to get to be able to have the custom orthotics approved in writing for the pending law suit.

*Id.*[5]

11. On November 12, 2019, Herrick wrote Wood a letter in response to "an inquiry" that Health Services had received from Wood, "regarding [his] medical care on 10/30/2019." *Id.* at 14.

> Your inquiry indicated you are being denied a flex cuff order, a medical device that would aid in your weight loss, custom orthotics, knee surgery, and copies of your medical records.
>
> Based on the information provided and communications with your institution's medical department, it was reported you do not have a medical indication for flex cuff usage at this time. The provider on site recommended weight loss instead of orthotics. You currently have a pending referral for physical therapy for your back, referral for your knee condition, and a referral to see an audiologist. Also, you have received all requested medical record copies.
>
> As always, if you have any medical issues, please submit a sick call request for further evaluation of your medical needs and treatment plan. You are encouraged to follow the recommendation of the health care team as they are best suited to provide your clinical care. This completes our review.

*Id.*

12. Wood alleges that "Herrick again offered no treatment for [Wood]'s disease of morbid obesity." Dkt. No. 1-1 ¶ 23.

13. In a letter dated September 10, 2020, to Virginia Attorney General Mark Herring, in which Wood complained to Herring about the inadequate medical care that he had received for

[5] In his Complaint, Wood alleges that Mrs. Wood emailed several VDOC's personnel about Wood's "disease of morbid obesity and the refusal of treatment due to his disease." Dkt. 1-1 ¶ 22. Mrs. Wood's emails speak for themselves, and she did not complain about Wood not receiving treatment for his morbid obesity. Wood submitted in excess of 100 pages of documents, and he submitted nothing that predates the November 12, 2019 letter form Herrick complaining about not being treated for morbid obesity.

carpal tunnel syndrome; back issues; neck problems; osteoarthritis; podiatric issues (feet, toe, and ankles); flex cuffs; rollator walkers; pulmonary issues; and "*obesity for which [he] ha[d] received no treatment or medical diet for.*" Dkt. 4 at 16 (emphasis added).

14. Wood filed an Informal Complaint on December 15, 2020, DCC-INF-05633, stating that he "had been denied medical care and treatments due to [his] diagnos[is] [of] morbid obesity and [he] ha[d been] offered no treatment for his morbid obesity." *Id.* at 24. Nurse Stewart responded on January 6, 2021, stating "Mr. Wood, you were seen by Dr. Friend on 1-4-2021 about wanting a diet pill. It was noted that the requested prescription was not on the formulary here, and that diet and exercise is recommended for weight loss." *Id.; see also id.* at 33.

15. A note by Dr. Friend to Wood, dated January 5, 2021, indicated that the prescription that Wood sought was Contrave, which "is a combination of Wellbutrin and naltrexone." *Id.* at 27.

16. Wood filed a Regular Grievance, DCC-21-REG-00005, on January 11, 2021, stating that he "had been denied medical care and treatments due to my diagnosed morbid obesity and [he] has been offered no treatment for his morbid obesity. This is a violation of OP 720.1IV(A)(4)." *Id.* at 28.[6] The Level I response by Assistant Warden Oates found the grievance unfounded. *Id.* at 30. The Level II response by the Health Services Director or Chief of Operations for Health Services on March 23, 2021 upheld the Level I response and noted that "[t]he physician will ultimately determine the course of your medical treatment" and encouraged Wood "to follow the recommendation of the health care staff . . . ." *Id.* at 31.[7]

[6] It is unclear which VDOC Operating Procedure ("OP") Wood is referring to in his Complaint. He did not attach a copy, and it is not part of the VDOC OP 720.1 on the VDOC website.

7 The Level II response was not issued by Herrick. It appears to have been issued by a person named "Dillon." Dkt. 4 at 31.

**III. Analysis**

Defendant Herrick's Motion to Dismiss seeks dismissal of the deliberate indifference claim against him because the claim is barred by the statute of limitations; it failed to state a claim of deliberate indifference against Herrick; Herrick is not liable under a theory of supervisory liability; and there is no cognizable claim for "failure to investigate." Dkt. 20 at 13. Wood's Response stated:

- "(Herrick) the Health Services Director at (VADOC), a lay man, after receiving the communication from the Governor, he inferred [Wood] to lose weight the proper instead of adequate Medical Treatment for [Wood]'s Podiatry conditions without any order or direction to the Deerfield Medical for Morbid Obesity Treatment." Dkt. 27 ¶ 12(g).
- "[T]o bring a Medical Treatment claim against non-medical supervisory Prison Officials such as Health Services Director Steve Herrick, a Plaintiff must show that the Defendants were personally involved with the denial of the treatment, Deliberately Indifferent with Prison Doctor's treatment, or tactically authorized, or was indifferent to the Prison Doctor's misconduct. *Miltier v. Beorn*, 896 F. 2d 848, 854 (4th [Cir.] 1990)." *Id.* ¶ 16.
- "'When a Prison Official has reason to believe (or actual knowledge) that a Prison Doctor or their assistants are mistreating (or not treating) a prisoner, a non-medical Prison Official can be charged with an Eighth Amendment Scienter requirement of Deliberate Indifference.' *Spruill v. Gills*, 372 F 3d. 218, 273 ([3rd Cir.] 2004); *Miltier*, 896 F 2d. 848." *Id.*
- "'Though a Prison Official has no substantive Constitutional duty to respond to grievances, he or she does have a duty to prevent and remedy Constitutional Violations It within his or her control.' *Scott v. Clarke*, 64 F. Su[pp]. 3d 813, 842 (W.D. Va. 2014)." *Id.* ¶ 17.
- Herrick is liable under the "continuing violation doctrine." *Id.* ¶ 20.

Wood's arguments are based on misrepresentation of facts and have no merit. Consequently, the Motion to Dismiss will be granted.

*A. Statute of Limitations.*

The statute of limitations for 42 U.S.C. § 1983 claims in Virginia is two years. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991). The accrual date of a § 1983 claim is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under

federal law accrual occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted); *see Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (explaining that under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action"). The only alleged harmful act attributed to Herrick is his November 12, 2019 letter to Wood in response to Wood's "inquiry." Dkt. 4 at 14. The record establishes that the Complaint was filed, at the earliest, on April 2, 2024. Dkt. 1-4.[8] Wood relies on the continuing violation doctrine to negate Herrick's statute of limitations argument. Dkt. 27 ¶ 20. Wood's argument has no merit.

Wood admits that Herrick was a lay administrator and does not allege that Herrick was a medical provider. Dkts. 1-1 ¶¶ 5, 62; 27 ¶ 12(g). In addition, Wood's theory of liability against Herrick is that he is a supervisory official. Dkt. 1-1 ¶ 5. Within the context of Wood's claim of deliberate indifference to a serious medical need—morbid obesity—Herrick's single act is consistent with that of an administrator. Given the documents submitted by Wood, the November 12, 2019 letter by Herrick was referencing Dr. Yancey's September 11, 2019 consultation with Wood, in which Dr. Yancey explained to Wood why the approving authority had denied the recommendation that Wood be provided with custom orthotics, and, in context, the custom orthotics were denied because the central approver stated that "intervention would be futile *without prior and sustained weight loss by Mr. Wood.*" *See supra* ¶¶ 6-7, 10 (emphasis added).

Interestingly, the term "morbid obesity" does not appear until Ray's October 18, 2019 letter to Wood. Dkt. 4 at 10. Indeed, Wood's first complaint about not being treated for obesity was in his September 10, 2020 letter to former Attorney General Mark Herring, which was over eight

[8] *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a pleading is deemed filed at the time a prisoner delivers it to the prison authorities for forwarding to the court clerk).

months after Herrick's November 12, 2019 letter to Wood.[9] *Id.* at 16. Prior to that letter, Wood and his wife discussed obesity in terms of it being the reason he was denied the orthotics. Although ignored by Wood, Herrick's November 12, 2019 letter referenced Wood's referral for physical therapy for his back, which would obviously be a means for weight reduction in that it would necessarily involve exercise—which is what Dr. Yancey and Nurse Stewart had recommended as part of a weight loss regime. To be sure, the first indication in Wood's attachments to his Complaint that mentions anything other than diet and exercise to help with his weight loss was the January 4, 2021 consultation Wood had with Dr. Friend. Dr. Friend told him that the diet pill Wood had requested was not on the formulary and Nurse Stewart's recommendation that because the pill was not on the formulary "diet and exercise [was] recommend for weight loss." Dkt. 4 at 24. In sum, Wood did not start seeking treatment for his morbid obesity until well after Herrick's letter. Wood's claim against Herrick accrued on November 12, 2019.[10] Because he did not file within two years of that date, his claim against Herrick is barred by the statute of limitations.[11]

As to the continuing violation doctrine, Herrick's November 12, 2019 letter is a discrete

---

[9] Although not relevant to the claim against Herrick, the need for weight loss was raised by a Dr. Ward at Virginia Commonwealth University on February 12, 2020 to review an MRI in relation to Wood's back and pain issues. Dkt. 4 at 21-22. Dr. Ward noted that Wood "clearly needs a significant weight reduction if . . . expects to get spine surgery. . . ." *Id.* at 21. Wood apparently was trying to lose weight; he weighed 339 lbs. on July 19, 2019, weighed 334 lbs. on September 11, 2019, and weighed 330 lbs. on February 12, 2020. *Id.* at 1, 3, 22.

[10] In the specific context of allegations of deliberate indifference to serious medical needs, a plaintiff's claim accrues on "the date he was denied adequate medical care." *Brown v. Harris*, 2012 WL 12383, at *2 (E.D. Va. Jan. 3, 2012), *aff'd*, 472 F. App'x 175 (4th Cir. 2012); *see also Wallace*, 549 U.S. at 388 ("[I]t is 'the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action,'" "that is, when 'the plaintiff can file suit and obtain relief.'") (citations omitted). The only incident in which Herrick was involved was the November 12, 2019 letter and, based upon that letter, Wood has alleged that Herrick was deliberately indifferent to his serious medical need, morbid obesity. Wood's claim against Herrick could have been filed on or after November 12, 2019.

[11] The same is not necessarily true for the other Defendants in this case. *See Est. of Roemer v. Johnson*, 764 F. App'x 784, 793 (10th Cir. 2019) (in cases where multiple defendants are alleged to be deliberately indifferent, district court is "required to separately analyze when the [plaintiff's] claims against each of these defendants accrued") (citing *Vasquez v. Davis*, 882 F.3d 1270, 1276 (10th Cir. 2018) (It is error to use a collective approach to the accrual analysis in multiple defendant cases and instead district court must conduct an individualized assessment of each of the claims against each of the separate defendants because "[t]he claim accrued once [plaintiff] knew Defendants' deliberate indifference caused him substantial harm, 'even though the full extent of the injury is not then known or predictable.'") (quoting *Wallace*, 549 U.S. at 391 (internal quotation marks omitted)).

act.[12] "The continuing violation doctrine . . . applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)); *see also Wright v. Moniz*, 737 F. Supp. 3d 48, 58-59 (D. Mass. 2024) (The "continuing violation doctrine," "covers only causes of action that 'by their very nature require repeated conduct to establish an actionable claim, such as hostile work environment claims' [and] . . . [i]t does not apply to 'discrete acts'—even repeated ones—that occurred on specific dates.") (citing *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 33-34 (1st Cir. 2009)).[13] Wood's claim against Herrick is barred by the statute of limitations.

*B. Supervisor Liability.*

Wood next cites the Fourth Circuit's opinion in *Miltier v. Beorn*, 896 F.2d 848, 854 (1990), arguing that Herrick was personally involved in the denial of medical treatment to Wood or that Herrick "tacitly authorized" an unnamed doctor's "misconduct." *Miltier* set forth the Fourth Circuit's well-established test for supervisory liability.

> Section 1983 liability on the part of the supervisory defendants requires a showing that: (1) the supervisory defendants failed promptly to provide an inmate with

[12] In the context of analyzing the applicable statute of limitations for a discriminatory or retaliatory act, the United States Supreme Court stated that a discrete act "'occur[s]' on the day that it 'happen[s]'" and "starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 110, 113.

[13] *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) ("We can find no principled basis upon which to restrict *Morgan* to Title VII claims, and we therefore conclude that the Supreme Court's reasoning must be applied to the firefighter's § 1983 claims."); *see Groesch v. City of Springfield*, 635 F.3d 1020, 1027 (7th Cir. 2011) ("[W]hile [*Morgan*] focused on the timeliness of Title VII claims, [*Morgan*] also applied to Section 1983 claims: 'The Supreme Court's ruling in [*Morgan*], although discussing the continuing violation doctrine in the Title VII context, applies equally to § 1983 cases.'"); *O'Connor v. City of Newark*, 440 F.3d 125, 128 (2006) ("The principles at work in *Morgan* apply with equal force to § 1983 claims. *Morgan* held simply that causes of action that can be brought individually expire with the applicable limitations period."); *see also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998) ("[T]he district court's conclusion is infirm because it lumps all of 'these defendants' together despite the fact that each of the defendants had different powers and duties and took different actions with respect to Professor Tonkovich."); *cf. Fauconier v. Clarke*, 966 F.3d 265, 273 (4th Cir. 2020) (each refusal to hire triggered a separate period of limitations in equal protection challenge for hiring discrimination).

> needed medical care, *see Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979); (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, *see Gamble v. Estelle*, 554 F.2d 653, 654 (5th Cir. 1977); or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations. *See Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)

896 F.2d at 854.

Here, Herrick responded to Wood once Wood's letter reached him, investigated Wood's concerns (which did not include he had been denied treatment for his morbid obesity), which is evident by Herrick's reference in his letter to the information provided by Wood's institution's medical department. Herrick noted the medical care that had been provided, the recommendations made by the medical personnel (which included that weight loss had been recommended in lieu of the orthotics), he did not interfere with the medical care being provided and noted that Wood had "a pending referral for physical therapy for your back, referral for your knee condition, and a referral to see an [a]udiologist. Also, [Wood had] received all requested medical record copies." Dkt. 4 at 14. In short, Wood was receiving medical care for a variety of medical conditions and Herrick had no basis to intervene or interfere. Herrick was allowed to rely on the opinions, judgment, and expertise of medical personnel. *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) (citing *Miltier*, 896 F.2d at 854); *Grady v. Greenfield*, 670 F. App'x 818, 819 (4th Cir. 2016) ("prison officials are entitled to rely on medical opinions") (citing *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016)); *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (nonmedical prison official "can generally rely on his medical staff's examinations and diagnoses" in determining what level of treatment is warranted) (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.

2004); *Miltier*, 896 F.2d at 854-55)).[14] Wood's argument has no merit.[15]

*C. Deliberate Indifference to a Serious Medical Need.*

"A prison official's deliberate indifference to an inmate's serious medical needs" violates the Eighth Amendment. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A deliberate indifference claim has an objective and a subjective component. First, the objective component, requires that the plaintiff's "medical condition . . . be 'serious'—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* Second, the subjective component, requires showing that the defendant "had actual subjective knowledge of both the [plaintiff's] serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* In addition, prison officials are entitled to rely on the opinions, judgment, and expertise of medical personnel.

[14] It is not the function of prison administrators or nurses to second-guess the good faith treatment decisions of licensed physicians. *Shakka*, 71 F.3d at 167; *see Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (a nurse administrator could rely on opinion of a prison doctor about the treatment that was deemed necessary for a prisoner). The administrators themselves "cannot be liable for the medical staff's diagnostic decisions" and, indeed, "cannot substitute their judgment for a medical professional's prescription." *Meloy*, 302 F.3d at 849; *see also Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants . . . can rely on the expertise of medical personnel. We have previously stated that if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.").

[15] Wood also argues in his response, citing *Spruill*, that a prison official "has reason to believe (or actual knowledge) that a Prison Doctor or their assistants are mistreating (or not treating) a prisoner, a non-medical Prison Official can be charged with an Eighth Amendment Scienter requirement of Deliberate Indifference." *Spruill v. Gills*, 372 F 3d. 218, 273 (3rd Cir. 2004); *Miltier*, 896 F 2d. 848. While the statement appears in *Spruill*, the facts alleged in this case do not support any inference that Herrick had any reason to believe that the medical providers at DCC were either mistreating or not treating Wood. As shown above, Herrick investigated and found that Wood was being provided with medical attention for a variety of medical complaints. Importantly, as noted herein, Wood did not complain about treatment for his morbid obesity until well after Herrick's discrete involvement on November 12, 2019. Dkt. 4 at 12-13. For these same reasons, Wood's cite to *Scott* has no merit. Here, the record establishes that Herrick investigated Wood's allegations of inadequate medical care, and Herrick found that the medical providers were addressing his various medical complaints. Wood may have disagreed with the medical providers at DCC, but he is not entitled, under the Constitution, to the "treatment, diagnosis, and placement that he might desire." *Price v. Dixon*, 961 F. Supp. 894, 899 (E.D.N.C. 1997) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). In the Eighth Amendment context, the Supreme Court has recognized that "unqualified access to health care" is not required, *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor is access to the "best and most expensive form of treatment," *Taylor v. Barnett*, 105 F. Supp. 2d 483, 489 n.2 (E.D. Va. 2000). In addition, an official's inadvertent failure to provide appropriate medical care, or an inmate's mere disagreement with a doctor's medical judgment do not constitute deliberate indifference. *Wright*, 766 F.2d at 849.

*See Miltier*, 896 F.2d at 854 (finding non-medical prison personnel may "upon their health care providers' expertise").

For a prisoner to state a constitutional claim for denial of medical or dental care, he must demonstrate that a defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As the Fourth Circuit has held, "[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851 (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (7th Cir. 1986) (cases collected)).

Here, Herrick, who was not involved personally[16] with providing medical care to Wood, was a non-medical lay administrator; he investigated Wood's concerns about his medical care and, as set forth above, relied upon the expertise of the medical personnel at DCC. *See supra* at 13; *see also Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) (non-medical prison officials are not deliberately indifferent if they rely on the professional judgment of prison medical staff); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (non-physician prison employees were not "deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor").[17] Herrick was deliberately

[16] *See, e.g.*, *Chamberlain v. Clarke*, 2014 WL 2154183, at *3 (W.D. Va. May 22, 2014) ("[A]n inmate cannot prevail on a deliberate indifference to medical needs claim against non-medical prison personnel unless they were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were deliberately indifferent to a prison doctor's misconduct" and his "dissatisfaction with their responses to his grievances is a non-starter.") (citing *Miltier*, 896 F.2d at 854-55; *Lewis v. Angelone*, 926 F. Supp. 69, 73 (W.D. Va. 1996)).

[17] To the extent Wood argues that the November 12, 2019 was a grievance, he has failed to state a claim of deliberate indifference with respect to Herrick. Herrick's conclusion that Wood's concerns of inadequate medical care were unfounded did not violate Wood's constitutional rights. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (simply "[r]uling against a prisoner . . . does not cause or contribute to the [constitutional] violation"); *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) ("The 'denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'") (citation omitted); *cf. Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (holding prisoner had no claim for "failure to investigate" a grievance because there was no "protected liberty interest" in having a grievance "resolved to his

indifferent to Wood's serious medical needs.

## IV. Conclusion

For the reasons outlined above, Defendants' Motion to Dismiss (Dkt. 10) will be GRANTED through an Order that will be issued alongside this Memorandum Opinion.

Entered this 2 day of September 2026.

Alexandria, Virginia

/s/

Rossie D. Alston, Jr.
United States District Judge

---

satisfaction"); *Hinton v. Mason*, 2018 WL 1763520, at *5 (E.D. Va. Apr. 12, 2018) ("[T]he failure to investigate a complaint or grievance fails to state a claim of constitutional dimension.") (citing *Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006) (failure to investigate a grievance "fails to assert a due process violation").